IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-02081-WYD-KLM

NELSON STONE, M.D.; and
STONE FAMILY LLC, a New York limited liability company, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

VAIL RESORTS DEVELOPMENT COMPANY, a Colorado corporation; and
ARRABELLE AT VAIL SQUARE, LLC, a Colorado limited liability company,

    Defendants.

# ORDER

## I.    INTRODUCTION

THIS MATTER comes before the Court on Defendants' Motion to Compel Arbitration (docket #16), filed November 19, 2009. Plaintiffs filed a response and the Defendants filed a reply in support of the motion. After carefully considering the motion, response, and reply, I find that the motion should be granted for the reasons stated below.

## II.    BACKGROUND

In this action grounded in diversity jurisdiction, Plaintiffs assert the following four claims for relief under Colorado law arising out of the Defendants' alleged failure to fulfill a promise of assigned parking rights at the condominium complex known as Arrabelle at Vail Square ("Arrabelle"): (1) breach of contract; (2) fraud; (3) deceptive trade practices;

and (4) fraudulent concealment. Defendants have moved to compel arbitration of Plaintiffs' claims against Defendant Arrabelle at Vail Square ("AVS") and stay these proceedings pending the outcome of arbitration.

By way of background, on August 31, 2009, Plaintiffs filed the instant action alleging that as part of the purchase of their condominium, they were promised assigned parking that would be located near the entry point of the condominium in a development known as Arrabelle at Vail Square ("Arrabelle"). Plaintiffs allege that instead of honoring those representations and promises, Defendants secretly eliminated the assigned parking rights and substituted a document providing for valet parking, which is of much lesser value.

In the motion to compel arbitration, Defendants argue that Plaintiffs' claims are subject to the Condominium Declaration for Arrabelle at Vail Square Residential Condominiums ("Declaration") and its mandatory arbitration clause. Defendants state that Plaintiff Stone Family LLC is the assignee of an initial Purchase and Sale Agreement ("PSA") for a condominium at Arrabelle. Pursuant to the Declaration and the Reciprocal Easements and Covenants Agreement ("RECA"), owners of condominiums at Arrabelle have a license to valet park a vehicle at Arrabelle.

Under the Declaration's arbitration clause, "all claims arising out of or relating to the interpretation, application or enforcement of this Declaration, or the rights, obligations and duties of any Bound Party under this Declaration" must be arbitrated unless resolved through mediation. (Declaration § 7.4.) Defendants contend that Plaintiffs' claims relate to the interpretation, application and enforcement of this

Declaration and the rights, obligations and duties of AVS and Plaintiffs as bound parties under the Declaration.

In response, Plaintiffs dispute Defendants' argument. Specifically, Plaintiffs claim that the Declaration's arbitration clause does not apply to Plaintiffs' claims because they do not arise out of or relate to the Declaration or the rights and duties of any bound party. Plaintiffs further argue that even if the arbitration clause could be read to encompass Plaintiffs' claims, it specifically excludes "any suit in which any indispensable party is not a Bound Party." (Declaration § 7.4(d).) Plaintiffs also contend that Defendants waived their right to compel arbitration since it was not included as an affirmative defense in the Answer to the Complaint. Finally, Plaintiffs argue that their claim brought under the Colorado Consumer Protection Act ("CCPA") is not subject to arbitration.

III. <u>ANALYSIS</u>

    A. <u>Whether an Enforceable Arbitration Agreement Exists</u>

Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 4. A motion to compel arbitration based on an arbitration agreement is governed by 9 U.S.C. § 4 which reads as follows:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall

proceed summarily to the trial thereof.

Based on the pleadings submitted by the parties, it is undisputed that a valid and enforceable agreement to arbitrate exists between Plaintiffs and Defendant AVS.

B.     Whether Plaintiffs' Claims are Subject to Arbitration

Having found that an enforceable arbitration agreement exists between the parties, I now turn to the issue of whether Plaintiffs' claims against AVS are subject to arbitration.

As an initial matter, I note than Plaintiffs argue that Colorado law, not the Federal Arbitration Act ("FAA") should govern this inquiry. I disagree. The FAA governs any arbitration agreement "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Cummings*, 404 F.3d at 1261. Commerce is defined as:

> commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.

9 U.S.C. § 1. Here, I find Plaintiffs' claims involve commerce. Plaintiffs are New York residents engaged in the purchase of newly constructed real estate located in Vail, Colorado. *See N.L.R.B. v. International Union of Operating Engineers, Local 571*, 317 F.2d 638, 642-43 (8th Cir. 1963) (finding the building and construction industry is an industry affecting commerce).

Further, "[t]he effect of [section 2 of the Federal Arbitration Act] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement

within the coverage of the Act." *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 334 (10th Cir. 1993) (internal citations omitted). Thus, the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478 (1989). Here, pursuant to the Declaration, the parties entered into a private agreement to arbitrate claims. The parties further agreed to abide by Colorado rules of arbitration. I find that enforcing those rules according to the terms of the arbitration agreement is consistent with the goals of the FAA. Thus, I will apply the FAA to the issue of whether Plaintiffs' claims are subject to arbitration.

The FAA was enacted "to reverse the long-standing judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Corp.*, 500 U.S. 20, 24 (1991). The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488-89 (10th Cir. 1994). Courts must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration. *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 798 (10th Cir. 1995).

Turning to the case at hand, in deciding whether Plaintiffs' claims are subject to

arbitration, I first examine the scope of the arbitration provision in the Declaration and then determine whether Plaintiffs' claims fall within its scope. *Cummings*, 404 F.3d at 1261 (*citing Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.,* 362 F.3d 1288, 1290 (10th Cir. 2004)). "'To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry.'" *Id.* (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).

> First . . . a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.* Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (emphasis in original).

Applying this test to the arbitration clause at issue, I consider the relevant language of the Declaration. Section 7.4 <u>Claims</u> provides in part:

> Unless specifically exempted below, all Claims arising out of or relating to the interpretation, application or enforcement of this Declaration, or the rights, obligations and duties of any Bound Party under this Declaration, or relating to the design or construction of the Units or the Common Elements shall be subject to the provisions of Section 7.5 of this Declaration.
> . . .
> (d) any suit in which any indispensable party is not a Bound Party;

. . .

(Declaration § 7.4.)

     Section 7.5 <u>Mandatory Procedures</u> provides in part:

> (a)    <u>Notice</u>. Any bound Party having a Claim ("Claimant") against any other Bound Party ("Respondent") (the Claimant and the Respondent are hereinafter referred to individually, as a "Party," or, collectively, as the "Parties") shall notify each Respondent in writing (the "Notice"), stating plainly and concisely (I) the nature of the Claim, including the Persons involved and Respondent's role in the Claim; (ii) the legal basis of the Claim . . . ; (iii) the proposed remedy; and (iv) the fact that Claimant will meet with Respondent to discuss in good faith ways to resolve the Claim.
>
> (b)    <u>Negotiation and Mediation</u>.
> . . .
>
> (c)    <u>Final and Binding Arbitration</u>.
>     (I) If the Parties do not agree in writing to a settlement of the Claim within 15 days of the Termination of Mediation, the Claimant shall have 15 additional days to submit the Claim to arbitration in accordance with the Rules of Arbitration contained in <u>Exhibit E</u> or such rules as may be required by the agency providing the arbitrator.
> . . .

(Declaration § 7.5.)

    I find that the language of § 7.4 controls what claims are subject to arbitration because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Cummings,* 404 F.3d at 1262 (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). In attempting to narrow the scope of the provision, Plaintiffs argue that "this clause applies only to claims arising out of or relating to the Declaration, and not to

claims – such as Plaintiffs' – related to the promises and misrepresentations made in the draft RECA, the PSA, and other sales literature and documents . . . ." (Pls.' Resp. at 3.) I do not find this argument persuasive. Rather, I agree with Defendants that the arbitration clause's phrase "arising out of, or relating to," is evidence of the parties' intent that the clause be applied broadly.

As such, I find the arbitration clause found at § 7.4 to be broad in scope, because it is "the type of provision that 'refer[s] all disputes arising out of a contract to arbitration.'" *Cummings,* 404 F.3d at 1261. "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* at 1261. In other words, "[w]hen a contract contains a broad arbitration clause, matters that touch the underlying contract should be arbitrated." *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir. 2000).

Having found the arbitration provision to be broad, I must consider whether Plaintiffs' claims against Defendant AVS fall within the scope of the provision. Again, I note that there is a presumption of arbitrability of these claims. The claims that are asserted in the Complaint include: breach of contract, fraud, deceptive trade practices and fraudulent concealment. These claims arise out of a dispute involving Plaintiffs' parking rights at Arrabelle. I find that these claims fall within the broad purview of the arbitration provision in the Declaration. Pursuant to the PSA signed by the Plaintiffs, owners of condominiums at Arrabelle have a license to valet park a vehicle at Arrabelle as defined by the Declaration and the RECA. (PSA § 1.4; Declaration § 3.4; RECA §

2(a)(iii).) The Declaration is explicitly referenced in both the PSA and the RECA. Thus, I reject Plaintiffs' argument that the Declaration's arbitration clause does not apply to Plaintiffs' claims because they do not arise out of or relate to the Declaration.

C. <u>Whether Defendant Vail Resorts Development Company is an Indispensable Party</u>

I now turn to Plaintiffs' contention that their claims are not arbitrable because Defendant Vail Resorts Development Company ("VRDC") is an indispensable party. The arbitration clause specifically excludes "any suit in which any indispensable party is not a Bound Party." (Declaration § 7.4(d).) Plaintiffs have asserted their claims against both Defendants AVS and VRDC.

The Tenth Circuit has held that

> [a]n indispensable party is one who has such an interest in the subject matter of the controversy that a final decree cannot be rendered as between other claimants, of interest in the subject matter, who are parties to the action, without radically and injuriously affecting his interest and without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience.

*Milligan v. Anderson*, 522 F.2d 1202, 1204 (10th Cir. 1975). The *Milligan* court went on to hold that because the agent at issue was not a party to the actual contract between plaintiff and the co-defendant, he was not an indispensable party. *Id.* at 1205,

Here, it is undisputed that because all the contractual agreements are between Plaintiffs and AVS, they are both bound parties under the arbitration clause where VRDC is not. However, guided by the *Milligan* court's reasoning, I find that since VRDC was not a party to the agreements at issue, VRDC is not an indispensable party such

-9-

that arbitration between Plaintiffs and AVS is precluded.

        D.      <u>Whether Defendants Waived their Right to Compel Arbitration</u>

Next, I address Plaintiffs' contention that Defendants waived their right to compel arbitration because it was not raised as an affirmative defense in the Answer to the Complaint.

In order to determine whether a party has waived its right to arbitration, the Tenth Circuit has instructed courts to examine the following factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Metz*, 39 F.3d at 1489. Here, Defendants were served with the Complaint on September 3, 2009. The motion to compel arbitration was filed approximately 75 days later on November 19, 2009. Further, the Defendants state that they raised the issue of compelling arbitration in their initial disclosures and prior to the initial scheduling conference held on November 3, 2009. Thus, I find that Defendants' actions were consistent with the right to arbitrate. The request to both arbitrate and stay this proceeding was made soon after the lawsuit was filed. Further, I find no evidence that Defendants requested arbitration in an effort to delay, mislead, or prejudice Plaintiffs.

This argument is rejected.

### E. Whether Plaintiffs' CCPA Claim is Subject to Arbitration

Finally, I turn to Plaintiffs' argument that their CCPA claim is not subject to arbitration. I disagree and note that Plaintiffs fail to cite any persuasive authority in support of this contention. In *Lenox-Maclaren Surgical Corp. v. Medtronic Sofamor Danek USA, Inc.*, No. 07-cv-02054-MSK-KMT, 2008 WL 3851936 at *6 (D.Colo. Aug. 13, 2008), this Court concluded that plaintiff's CCPA claim was related to the agreement and, therefore, must be arbitrated. Here, Plaintiffs' claims are based on alleged promises with respect to parking rights that are clearly related to the PSA, the RECA, and the Declaration. The PSA explicitly states that "pursuant to the RECA . . . and the Declaration, Purchaser, as owner of the unit, will be entitled to park 1 vehicle(s) within the Commercial Project on the terms and conditions contained in the RECA and the Declaration." (PSA § 1.4.) Thus, I find that Plaintiffs' CCPA claim is subject to arbitration.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion to Compel Arbitration (docket #16) is **GRANTED**. It is

FURTHER ORDERED that pursuant to 9 U.S.C. §§ 3-4, the parties shall proceed with arbitration in accordance with the Declaration's arbitration clause. This Court shall retain jurisdiction until arbitration has been completed. It is

FURTHER ORDERED that since the length of the arbitration process is

uncertain, I find that this case should be administratively closed pursuant to D.C.COLO.LCivR 41.2 with leave to be reopened for good cause shown. If no action is taken to reopen this case before May 1, 2011, the case will be dismissed without prejudice without any further notice to either party. It is

FURTHER ORDERED that this case is **STAYED as to Defendant VRDC** pending the completion of the arbitration.

Dated: July 1, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge